IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-710-BO-BM

A&C GAMING, LLC, ALEXI CLAUDIO, )
and CINNAMON CLAUDIO, )
                                 )
           Plaintiffs, )
                                 )
v. )                          O R D E R
                                 )
BHG FINANCIAL, LLC f/k/a BANKERS )
HEALTHCARE GROUP, LLC, )
                                 )
           Defendant. )

This cause comes before the Court on defendant's partial motion to dismiss [DE 10] and defendant's motion for partial judgment on the pleadings [DE 27]. The appropriate responses and replies have been filed, and a hearing on the motions was held before the undersigned on August 8, 2025, at Elizabeth City, North Carolina. In this posture, the motions are ripe for ruling. For the following reasons, the partial motion to dismiss is denied and the motion for partial judgment on the pleadings is granted.

BACKGROUND

Plaintiff A&C Gaming sought financing to open a gaming café. [DE 1-5, ¶ 15]. On A&C's behalf, plaintiff Alexi Claudio, sole member and officer of A&C, submitted a credit application to defendant, BHG Financial. *Id.* at ¶¶ 6, 19. BHG required a guarantor on the loan. *Id.* at ¶ 28. Therefore, plaintiff Cinnamon Claudio, Alexi's wife, cosigned the loan. *Id.* at ¶ 30. The financing agreement contained a choice of law provision naming Florida. *Id.* at ¶ 39. Plaintiffs' claims are

(1) a declaratory judgment establishing the original loan agreement as usurious, (2) an Equal Credit Opportunity Act claim for discrimination on the basis of marital status, and (3) violation of North Carolina Unfair and Deceptive Trade Practices Act. BHG's motion to dismiss [DE 10] attempts to dispose of plaintiffs' first and third claims, for declaratory judgment and violation of the North Carolina Unfair and Deceptive Trade Practices Act, which plaintiffs bring on the theory that certain withheld fees associated with the loan should be construed to push the interest rate above the rate constituting usury. The motion for judgment on the pleadings [DE 27] attempts to dispose of the second claim, brought under the Equal Credit Opportunity Act on the theory that BHG, by requiring Cinnamon to cosign the loan, discriminated unlawfully based on marital status. In BHG's answer, it counterclaims breach of loan agreement against A&C and breach of personal guaranty against Alexi and Cinnamon. [DE 12].

## ANALYSIS

### I. Partial Motion to Dismiss

A 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. See Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard does not require detailed factual allegations, *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 212 (4th Cir. 2019), but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022). "To survive a motion to dismiss, a complaint must contain sufficient

2

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

The parties agree that because of the financing agreement's choice of law provision, Florida law applies to this dispute. [DE 12, ¶75].

*a. Declaratory Judgment Claim*

The four elements of a usurious transaction are

1. A loan, either express or implied.
2. An understanding between the lender and the borrower that the money must be repaid.
3. For such loan a greater rate of interest than is allowed by law shall be paid or agreed to be paid.
4. There must be a corrupt intent on the part of the lender to take more than the legal rate of interest for the use of the money loaned.

*Rebman v. Flagship First Nat. Bank of Highlands Cnty.*, 472 So. 2d 1360, 1362 (Fla. Dist. Ct. App. 1985). Florida's usury statutes further clarify,

"the rate of interest on any loan . . . shall be determined and computed upon the assumption that the debt will be paid according to the agreed terms . . . and any payment or property charged, reserved, or taken as an advance or forbearance, which is in the nature of, and taken into account in the calculation of, interest shall be valued as of the date received and shall be spread over the stated term of the loan."

Fla. Stat. § 687.03(3). *St. Petersburg Bank & Trust Co. v. Hamm*, 414 So. 2d 1071, (Fla. 1982) explains how to calculate a loan's effective interest rate given a qualifying withholding of principal that is in the nature of interest under Fla. Stat. § 687.03(3). First, the withheld amount is divided by the stated principal amount of the loan and the quotient is expressed as a percentage. In the present case, $20,050 in transaction fees divided by a $267,050 principal amount yields a rounded 7.5%. That figure is then divided by the number of years in the term – here, 10 years. 7.5% divided
3

by 10 is 0.75%. This figure is added to the annual interest rate on the face of the note. *Hamm*, 414 So. 2d at 1073.

Plaintiffs, correctly applying *Hamm*'s construction of the statutory methodology, arrived at an effective interest rate of 18.24%. The issue is whether this kind of alternative calculation for an effective interest rate is appropriate in the first place. Not every withholding of loan proceeds triggers interest rate recalculation for usury purposes. For example, *Rebman v. Flagship First Nat. Bank of Highlands Cnty.*, 472 So. 2d 1360 (Fla. Dist. Ct. App. 1985), involved an optional deposit of loan proceeds into a non-interest-bearing escrow account. The court reasoned,

> "any amounts advanced by a lender which directly or indirectly benefit the borrower—as well as any amounts directly received by a borrower—should be a part of the principal used for calculating interest under our usury law. That being so, although the escrowed monies never passed through Rebman's hands, they were used exclusively to benefit her in the payment of her monthly principal and interest obligation. Consequently, we find appellant's argument that the escrow accounts were in fact compensating balance or interest reserve accounts established for the bank's benefit is without merit."

472 So. 2d at 1363.

The fact that the withholding was voluntary and the fact that it benefitted exclusively the debtor appear essential to the *Rebman* court's decision not to recalculate the interest rate. *Id.* Contrastingly, in *Velletri v. Dixon*, the court recalculated the interest rate where a creditor's retention of significant loan proceeds was mandatory, and the withholding sought to incentivize the debtor to perform proposed renovations. 44 So. 3d 187, 189 (Fla. Dist. Ct. App. 2010).

Plaintiffs have met the burden of alleging facts that make an inference of usury plausible. They allege that the withholding was accompanied by no abatement in interest, [DE 1-5, ¶ 47] and it is plain that at least some of the withheld amount was intended "to ensure that BHG Financial has a perfected lien in the assets of the Debtor's business." [DE 1-5, Ex. 6]. Since the withholding

4

was not "exclusively to benefit" the debtor, it is at least plausible that it should escape the non-interest characterization of the withheld amounts in *Rebman.*

Because the element of "corrupt intent does not require . . . a specific intention" to violate usury statutes, see *Saralegui v. Sacher, Zelman, Van Sant Paul, Beily, Hartman & Waldman, P.A.*, 19 So. 3d 1048, 1051 (Fla. Distr. Ct. App. 2009), but rather a general intent to charge an effective interest rate that exceeds the statutory limit, and given that plaintiffs have plausibly alleged the loan at issue charged a usurious effective rate, they have satisfied their pleading standard as to the latter two elements of usury. The parties agree that the first two are satisfied.

### b. North Carolina Unfair and Deceptive Trade Practices Act

North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA), codified at N.C.G.S. § 75-1.1, makes unfair methods of competition in or affecting commerce unlawful. "The elements for a claim for unfair or deceptive trade practices are: '(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affective commerce, (3) which proximately caused actual injury to the plaintiff or to his business.'" *Noble v. Hooters of Greenville (NC), LLC*, 199 N.C. App. 163, 166 (2009). What constitutes an unfair or deceptive trade practice is a question of law. *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68 (2000). "Either unfairness or deception can bring conduct within the purview of the statute" and, as a result, "an act need not be both unfair and deceptive." *Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 903 (4th Cir. 1996) (citing *Rucker v. Huffman*, 99 N.C. App. 137 (1990)). Violations of the North Carlina usury statute constitute unfair trade practices. *See, e.g.*, *State ex rel. Cooper v. NCCS Loans, Inc.*, 174 N.C. App. 630, 641 (2005); *Gilbert v. Residential Funding LLC*, 678 F.3d 271 (4th Cir. 2012).

Plaintiffs argue their UDTPA claim on three theories. First, by alleging usury, they have alleged a UDTPA violation because usury is unfair. Second, by alleging discrimination based on marital status in violation of the ECOA, they have alleged an unfair trade practice. Third, those same allegations of discrimination based on marital status are sufficient to establish a North Carolina claim prohibiting the use of any discriminatory practices associated with the extension of credit to North Carolina citizens, which could similarly be a per se basis for finding a UDTPA violation. As discussed below, the facts pled do not raise a plausible inference of unlawful discrimination based on marital status, and so only plaintiffs' first theory need be discussed.

BHG contends that its alleged violation of Florida's usury statute escapes designation as an unfair trade practice in North Carolina because it is not a violation of North Carolina law. The Court of Appeals of North Carolina, in *Wall v. Automoney, Inc.*, 284 N.C. App. 514, (2022), encountered the question of whether a choice of law provision allows a transaction to circumvent the application of the UDTPA. There, because the legislature intended that the UDTPA be construed broadly to protect the citizens of North Carolina, and because the choice of law provision would deprive the plaintiffs of protection by North Carolina's usury law, the Court of Appeals found sufficient allegations for the UDTPA claim to survive a 12(b)(6) motion to dismiss. *Id.* at 526-28.

BHG argues, because the loan at issue would not violate North Carolina's usury statute if that law were applicable, that the choice of law provision naming Florida does not deprive plaintiffs of any protection to which they would otherwise be entitled. Moreover, applying the UDTPA to violations of other states' laws would expand its scope beyond what the legislature intended. This is a compelling argument with respect to the choice of law issue. It does not follow, however, that a violation of a contract's governing law is unfair for the UDTPA's purposes only

6

when that discrete violation is also proscribed by North Carolina law. The parties attempted to benefit from their choice of law provision. Along with the benefits of Florida's law comes a usury statute which, as applied to the loan at issue, is more stringent than North Carolina's. When Florida law governs an instrument, Florida law is also best suited to determine what practices make the instrument unfair. Usury is a practice sufficiently unfair to support a claim under the UDTPA, and plaintiffs have alleged usury sufficiently to survive a 12(b)(6) motion to dismiss. Therefore, their UDTPA claim based on usury is also pled sufficiently to survive defendant's motion to dismiss.

## II. Partial Motion for Judgment on the Pleadings

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) allows for a party to move for entry of judgment after the close of the pleadings stage, but early enough so as not to delay trial. Fed. R. Civ. P. 12(c). Courts apply the Rule 12(b)(6) standard when reviewing a motion under Rule 12(c). *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 375 (4th Cir. 2012). "Judgment on the pleadings is not properly granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *United States v. Any & all Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000).

Plaintiffs assert a claim under the Equal Credit Opportunity Act, ECOA, alleging that BHG required a cosigner on Alexi's loan because he was married. The ECOA makes it unlawful for "any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of . . . marital status." 15 U.S.C. § 1691(a)(1). Regulation B, codified in 12 C.F.R. § 202, *et seq.*, contains a "spouse-guarantor rule," prohibiting creditors from requiring an applicant's spouse to cosign the applicant's credit instrument when the applicant is independently creditworthy. To make out an ECOA claim under the spouse-guarantor rule,

7

> a spouse-guarantor need only prove that [his or] her spouse applied for credit, and either the creditor "require[d] the signature of [the] applicant's spouse" if the applicant was individually creditworthy, or the creditor "required[d] that the spouse be the additional party" when it determined that the applicant was not independently creditworthy and would need the support of an additional party.

*RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 389 (6th Cir. 2014) (internal citations omitted).

Plaintiffs have not met the pleading standard as to this claim, and defendants are entitled to a judgment as a matter of law. To support their allegation that defendant discriminated against the applicants based on marital status, plaintiffs assert that BHG did not even investigate Alexi's independent creditworthiness. [DE 1-5, ¶ 32]. This is no support, but another conclusory allegation. BHG offers, attached to its answer [DE 12-3], information included in the credit application, which is relevant to determining applicants' creditworthiness. BHG provides sound and lawful reasoning to support denying the loan individually, and requiring a cosigner is a sensible counteroffer. Furthermore, plaintiffs allege nothing to indicate that BHG would accept only Cinnamon as a guarantor on the proposed credit. Even if BHG requested that Cinnamon cosign the loan, to allege that BHG would therefore accept *only* her guaranty is conclusory. Especially in light that Alexi did default on the loan, there can be no plausible inference on the pleadings that the counteroffer to have Cinnamon cosign was discrimination based on marital status.

## CONCLUSION

Defendant's partial motion to dismiss [DE 10] is DENIED. Defendant's motion for partial judgment on the pleadings [DE 27] is GRANTED.

SO ORDERED, this 24 day of September 2025.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE